SHEPARD & MORSE LUMBER CO. v. FRANKLIN TRUST CO. et al.

(Supreme Court, Appellate Division, Third Department. November 14, 1900.)

PLEADING—SUPPLEMENTAL COMPLAINT—MATERIALITY—CAUSE OF ACTION.

Plaintiff sued to foreclose a second chattel mortgage against the mortgagor and a prior mortgagee who had held in pledge some of the mortgaged property, alleging a certain amount due, and that the defendant mortgagee had disposed of the property without receiving full value, and prayed for judgment charging such mortgagee with the value of the property. After defendants had put in issue the amount due the plaintiff, he agreed with the mortgagor as to the amount due, and also obtained transfers of all the mortgagor's interest. Held, that motion to serve a supplemental complaint setting up such agreement and transfer for the purpose of confining the issue to the liability of the second mortgagee was properly denied, since, as to other creditors, the agreement was not conclusive as to the amount due, and was, therefore, immaterial; and, as affecting the liability of the defendant mortgagee, it was a new cause of action.

Appeal from special term, Franklin county.

Action by the Shepard & Morse Lumber Company against the Franklin Trust Company and others. From an order granting plaintiff leave to file a supplemental complaint, defendants appeal. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

James McKeen (John P. Kellas, of counsel), for appellants.

Patterson, Buckley & Vankirk (Charles E. Patterson, of counsel), for respondent.

MERWIN, J.   This action was brought in June, 1895, to foreclose a chattel mortgage and a transfer of securities executed on May 21, 1891, by the defendant Hurd to the plaintiff as security for a loan of $102,500.   The mortgage covered a large quantity of logs, four locomotives then in use on the line of the Northern Adirondack Railroad Company, and also the equity of Hurd in about 900 cars then on the line of that road or connecting roads.   The transfer included the equity of Hurd in mortgage bonds of that railroad company of the face value of $420,000, which were then held by the defendant the Franklin Trust Company as security for loans to the railroad company, made, as the plaintiff, in its complaint, alleged, by the trust company individually or as trustee for others, to the amount of $220,000.   The plaintiff's lien thereon was subject to the lien of the trust company.   Default on the part of Hurd was alleged, and that there was due to plaintiff on the debt secured the sum of $85,000 after applying all the proceeds of any of the mortgaged property which had come to the hands of plaintiff.   It was also alleged that the trust company afterwards, in violation of the rights of the plaintiff, unlawfully, and without receiving the value thereof, disposed of the bonds which it held, and allowed them to be used and canceled by the defendant Southard, its president, in the purchase by him on the 25th of May, 1895, of the property and franchises of the railroad company upon the foreclosure of the mortgage given to secure the payment of the bonds, and that the bonds were then worth their full face value.   The plaintiff demanded judgment for the foreclosure of its lien and a sale of the property to satisfy the same, and for a judgment against Hurd for any deficiency; also that the trust company be adjudged chargeable with the value of the bonds, and liable to pay the plaintiff for any deficiency.   There were some other allegations in the complaint, not important, however, to the question before us.   The defendant the trust company, in its answer, among other things, denied the allegations of the plaintiff as to the amount due the plaintiff, and denied any improper disposition of the bonds, and alleged that the debts for the payment of which the bonds were pledged as security amounted to the sum of $250,000 besides interest, of which the sum of $150,000, being a loan made by the trust company individually to the railroad company, was the first lien; that the debt was not paid at maturity, and thereupon, in accordance with the terms of the loan, the bonds were sold at public auction, after due notice given to the plaintiff and all others in interest, for the sum of $169,000, and the proceeds of the sale applied upon the debt.   The defendant Hurd answered, putting at issue the amount due the plaintiff, and also claiming that the trust company should account for the value of the bonds.   Some of the other defendants answered, claiming to be creditors of Hurd, and to have a lien, subject to the plaintiff's, on the logs mortgaged to plaintiff, and on the bonds; and they made allegations similar to those made

by the plaintiff as to the improper disposition by the trust company of the bonds, and its liability for the full value. The case was referred to a referee for trial and determination, and a large amount of evidence was given by the plaintiff relating to the accounts between the plaintiff and Hurd, with a view to the ascertainment of the amount due to the plaintiff upon the debt secured by the mortgage and transfer. The plaintiff and Hurd, on January 8, 1897, made an agreement in writing or stipulation fixing the amount due the plaintiff at the sum of $66,750. This the referee held did not bind the other defendants, and did not, as the case then stood, relieve the plaintiff from the burden of proving as against them the amount of the indebtedness owing to the plaintiff from Hurd under the instruments of May 21, 1891. Thereupon the plaintiff obtained from the receiver of Hurd in proceedings supplementary to execution and from his trustee in bankruptcy transfers of all the interest of Hurd in the property mentioned in the complaint subject to the original claim of the plaintiff and rights acquired by any of the parties defendant. The plaintiff then made a motion for leave to file and serve a proposed supplemental complaint, which set up the agreement of January 8, 1897, and the transfer to plaintiff from the receiver and the trustee, and demanded judgment as in the original complaint, and such further judgment as plaintiff might be entitled to because of the matters set forth. This motion was granted by the order appealed from.

The reason for serving the supplemental complaint seems to be, according to the moving papers, to avoid the necessity of a further examination of the state of the accounts between plaintiff and Hurd, and confine the issue before the referee to the question of the liability of the trust company for the conversion of the bonds and the amount of damages caused to whomsoever it may concern. Setting up in a supplemental complaint the stipulation between plaintiff and Hurd as to the balance due plaintiff does not make it any better evidence against the other defendants. The action, as brought, was to foreclose the mortgages held by plaintiff. Until it established its debt, it had no standing to assert foreclosure. If, by virtue of the recent transfer to it from Hurd or his representatives, it became vested with a better right, a cause of action it did not have before, such right or cause of action cannot, by a supplemental complaint, be tacked on to the original, and thus, by transfers subsequent to the commencement of the action, the cause of action be changed. Tiffany v. Bowerman, 2 Hun, 643; Haddow v. Lundy, 59 N. Y. 320, 327; Bostwick v. Menck, 4 Daly, 68; Staunton v. Swann, 10 Civ. Proc. R. 13; Story, Eq. Pl. § 336. Assume that Hurd or his assigns might bring an action against the trust company and all others in interest, and have there determined the liability of the trust company, and have the rights of all parties in the property adjusted, that would be a cause of action that the plaintiff, as assignee after the commencement of the suit, could not bring into this action by way of supplemental complaint; so that the plaintiff is setting up either a new cause of action or something immaterial. The new facts do not aid its right to foreclose upon proper proof, and if they

constitute, in connection with the complaint, a different cause of action, they are not in this way available to the plaintiff. The appellants, against one or more of whom a large claim is made for the benefit of the creditors of Hurd and contingently for the benefit of plaintiff, have the right to have the claim of plaintiff, as it existed when this suit was brought, tried and determined in the usual way. It follows that the motion of the plaintiff should not have been granted.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur.